T.C. Summary Opinion 2004-127

UNITED STATES TAX COURT

ROWLAND SETYONO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5500-03S.          Filed September 13, 2004.

Rowland Setyono, pro se.

<u>John D. Faucher</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies of $9,845 and $3,846 in petitioner's 1999 and 2000 Federal income taxes, respectively.

The issues for decision are: (1) Whether petitioner is entitled to claim rental real estate losses in excess of those allowed by respondent; (2) whether petitioner is entitled to deductions for employee business expenses; and (3) whether petitioner is liable for the 10-percent additional tax under section 72(t) for early distributions from retirement plans.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Sacramento, California.

## 1. Petitioner's Rental Real Estate Losses

During the years in issue, petitioner owned three houses: (1) 8501 Canterbury (Canterbury) in Sun Valley, California; (2) 960 N. Adams (Adams) in Chandler, Arizona; and (3) 28705 Persimmon Lane (Persimmon) in Saugus, California.

Petitioner purchased the Canterbury house around 1982 and still owns it. He did not have a tenant in this house during either 1999 or 2000.

Petitioner purchased the Adams house in 1996 and still owns it. Petitioner would drive from California to Arizona weekly to perform maintenance on the Adams house.

Petitioner hired Desert Wide Properties (Desert Wide) to manage the Adams property. Desert Wide was not responsible for cleaning the house or otherwise preparing it for rental. They simply advertised the property for rental and did not charge petitioner a fee until the property was rented. The Adams house was rented from September 1999 through the entire 2000 tax year. After it was rented, petitioner had no further need to drive to Arizona.

Petitioner has owned the Persimmon house since 1990. In 1993, he hired Southern California Real Estate Management Co. to manage the property. During the years at issue, petitioner had a tenant in the house and did not visit the property.

On his 1999 Schedule E, Supplemental Income and Loss, petitioner claimed deductions pertaining to the Adams and Persimmon properties of $28,614.27 and $38,649.53, respectively. Petitioner lived in the Adams house from January through June 1999. In the notice of deficiency, respondent reclassified from Schedule E to Schedule A, Itemized Deductions, $5,860 of the mortgage interest and property taxes attributable to the Adams property for the period during which petitioner lived there.

On his 2000 Schedule E, petitioner claimed deductions pertaining to the Adams and Persimmon rental properties of $25,616.92 and $38,213.00, respectively. Respondent determined that petitioner qualifies for a $25,000 loss for active participation in his rental real estate activity in each of the years in issue. Respondent disallowed loss deductions in excess of that amount.

2. Petitioner's Employee Business Expenses

During the years in issue, petitioner was employed as a computer analyst by Wells Fargo Bank (Wells Fargo), his employer of more than 20 years. At the beginning of 1999, petitioner was working in Tempe, Arizona. In June 1999 petitioner's job was relocated from Arizona to Sacramento, California. At that time, petitioner rented an apartment in Sacramento.

During one of the weekly trips he made from California to the Adams house to perform maintenance, petitioner retrieved from the Adams house computer manuals he needed for his job. He was not required by Wells Fargo to drive down and pick up the manuals. Petitioner did it for his own convenience. He did not keep records of the mileage he drove.

On his 1999 Schedule A, petitioner deducted his mileage expenses for trips to the Adams house as an employee business expense, claiming a total deduction of $13,392.00, less the 2-percent AGI floor of $1,360.87, or $12,031.13. On his 2000

Schedule A, petitioner deducted his mileage expenses for trips to the Adams house as an employee business expense, claiming a total deduction of $13,000, less the 2-percent AGI floor of $809.36, or $12,190.64.  Respondent disallowed petitioner's claimed deduction for mileage expenses because petitioner did not establish that the expenses were related to his employment.

3.   Petitioner's Retirement Plan Withdrawals

In 1999, petitioner made withdrawals from two retirement plans.  A Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reflects that his gross distribution from the Federal Savings Bank plan was $22,839.61.  The amount comprises $6,957.18 as a return of employee contributions and $15,882.43 as a taxable distribution.

Petitioner's gross distribution from his Wells Fargo section 401(k) plan was $12,850.  The full amount is identified on the Form 1099-R as a taxable distribution.  Petitioner reported both distributions as income on his 1999 Form 1040, U.S. Individual Income Tax Return.  He did not, however, report the 10-percent additional tax attributable to a premature withdrawal from a retirement plan.

In 2000, petitioner again made a withdrawal from the Wells Fargo section 401(k) plan.  The Form 1099-R reflects that his gross distribution was $10,793.25.  The full amount is identified

as taxable.  Petitioner reported the distribution as income on his 2000 Form 1040, but once again he did not report the 10-percent additional tax attributable to a premature withdrawal from a retirement plan.  In the notice of deficiency, respondent determined that petitioner is liable for the additional tax on premature distributions for each year.

Petitioner made the withdrawals to pay for his sister's funeral and to stop foreclosure on one of his properties.  Petitioner's sister passed away during the 1999 tax year.  She had lived in Indonesia, and her funeral was held there.  According to petitioner, the Muslim funeral ceremonies for his sister were required to span 3 years.  In 1999, petitioner spent approximately $12,000 to $15,000 for her funeral expenses.  He also spent the funds he withdrew in 2000 on his sister's funeral expenses.

At the end of 1998, First Nationwide Mortgage notified petitioner of its intent to foreclose on the Canterbury house.  In 1999, petitioner spent approximately $15,000 of the funds distributed to him from his pension plan to avoid the foreclosure.  At the time of trial, petitioner had not yet reached the age of 59-1/2 years.

## Discussion

The Commissioner's determinations in the notice of deficiency are presumed correct, and, generally, taxpayers must

prove those determinations wrong in order to prevail. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Because the issues to be decided are questions of law, section 7491(a) is inapplicable, and the Court decides the issues without regard to the burden of proof.

## 1. <u>Petitioner's Rental Real Estate Losses</u>

Section 469(a) generally disallows passive activity losses. Section 469(d)(1) defines "passive activity loss" as the excess of passive activity losses over passive activity income for the taxable year. Under section 469(c)(2), passive activity includes any rental activity, "without regard to whether or not the taxpayer materially participates in the activity." Sec. 469(c)(4).

However, under section 469(c)(7), section 469(c)(2) does not apply to the rental real estate activities of a taxpayer in the real property business (a real estate professional) if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B).

Petitioner was employed full time as a computer analyst with Wells Fargo. He testified that he retained two property management companies to manage the Adams and Persimmon properties. Petitioner also admitted that he did not keep any records as to how much time he devoted to his real estate activities. The Court concludes that petitioner does not satisfy the exception set forth in section 469(c)(7) and he is not entitled to deduct real estate losses in excess of the $25,000 loss allowed by respondent.

2. **Petitioner's Employee Business Expenses**

Deductions are a matter of legislative grace, and taxpayers must maintain adequate records to substantiate the amounts of any deductions or credits claimed. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. Generally, a taxpayer must establish that deductions claimed pursuant to section 162 are ordinary and necessary expenses and must maintain records sufficient to substantiate the amounts of the deductions claimed. Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), (e), Income Tax Regs.

With respect to certain business expenses specified in section 274(d), however, more stringent substantiation

requirements apply. Section 274(d) disallows deductions for traveling expenses, gifts, and meals and entertainment, as well as for listed property, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) The amount of the expense, (2) the time and place of the expense, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of the persons involved in the expense. The term "listed property" is defined in section 280F(d) and includes passenger vehicles. See sec. 280F(d)(4)(A)(i).

Under section 274(d), substantiation by means of adequate records requires a taxpayer to maintain a diary, a log, or a similar record, and documentary evidence that, in combination, are sufficient to establish each element of each expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). To be adequate, a record must generally be written. Each element of an expenditure or use that must be substantiated should be recorded at or near the time of that expenditure or use. Sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Thus, under section 274(d) no deduction may be allowed for expenses incurred for use of a passenger automobile on the basis of any

approximation or the unsupported testimony of the taxpayer. Bradley v. Commissioner, T.C. Memo. 1996-461; Golden v. Commissioner, T.C. Memo. 1993-602.

Petitioner's employment as a computer analyst did not require that he drive 13,392 miles in 1999 or 13,000 miles in 2000. Therefore, the Court finds that petitioner's mileage expenses are unrelated to his employment and thus are not deductible. Respondent's disallowance of petitioner's claimed employee business expenses is sustained.

3. Petitioner's Retirement Plan Withdrawals

Section 72 typically operates to include distributions in gross income, and subsection (t) provides for an additional tax on premature distributions. For purposes of the statute, section 4974(c) includes a pension plan described in section 401(a) as a qualified retirement plan.

None of the exceptions enumerated in section 72(t)(2) is applicable. Petitioner acknowledges that the funds were withdrawn from his retirement plan accounts and that he had not reached age 59-1/2. The foreclosure of petitioner's property and his sister's funeral expenses do not satisfy any of the exceptions set forth in section 72(t). Therefore, respondent's determination that petitioner is liable for each year for the 10-

percent additional tax on his premature distributions is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.